IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHARLES CURTIS ATKINSON,          )
                                  )
                Plaintiff,        )
                                  )
        v.                        )        1:18cv763
                                  )
CAROLINE FRICK, RN and            )
DEBRA E. COATS,                   )
                                  )
                Defendants.       )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on "Defendants' Motion for Summary Judgment" (Docket Entry 40) (the "Summary Judgment Motion").[1] For the reasons that follow, the Court should grant the Summary Judgment Motion.

## BACKGROUND

### I. Procedural History

Pursuant to 42 U.S.C. § 1983, Charles Curtis Atkinson (the "Plaintiff") commenced this action against Caroline Frick, R.N., and Debra E. Coats, R.N., (the "Defendants") for acts and/or omissions amounting to deliberate indifference to Plaintiff's serious medical needs during Plaintiff's incarceration at Randolph Correctional Institution ("Randolph"). (Docket Entry 2 (the

---

1 For legibility reasons, this Opinion omits all-cap font in quotations from the parties' materials.

"Complaint") at 2-10.)[2]  Each Defendant answered the Complaint, asserting various defenses (to include qualified immunity). (Docket Entries 23, 25.)  Thereafter, the parties commenced discovery.  (<u>See</u> Text Order dated Apr. 16, 2019 (adopting Scheduling Order).)

After discovery closed, Defendants jointly filed the Summary Judgment Motion (Docket Entry 40), supporting brief (Docket Entry 41), and accompanying materials (Docket Entries 41-1, 41-2, 41-3, 41-4, 41-5, 41-6, 41-7).  The following day, the Clerk sent Plaintiff a letter advising him of his "right to file a 20-page response in opposition . . . within 30 days from the date of service of the [Summary Judgment Motion] upon [him]."  (Docket Entry 42 at 1.)  The letter specifically cautioned Plaintiff that a "failure to . . . file affidavits or evidence in rebuttal within the allowed time may cause the [C]ourt to conclude that [Defendants'] contentions are undisputed and/or that [Plaintiff] no longer wish[es] to pursue the matter," as well as that, "unless [Plaintiff] file[s] a response in opposition to the [Summary Judgment Motion], it is likely . . . judgment [will be] granted in favor of [Defendants]."  (<u>Id.</u>)  Despite these warnings, Plaintiff

_____

2  Citations herein to Docket Entry pages utilize the CM/ECF footer's pagination.

did not respond.   (See Docket Entries dated Aug. 18, 2020, to present.)[3]

## II.  Factual History

As relevant to the Summary Judgment Motion, the record reflects the following:

### A.  Plaintiff's Allegations

In his unverified Complaint, Plaintiff alleges that:

Upon his admission to Randolph, Plaintiff visited with Defendant Frick, the chronic disease nurse, to "establish[] a [regimen] to control and treat [his] asthma and COPD." (Docket Entry 2 at 5.)  The prescribed treatments included the use of a nebulizer and two inhalers. (Id.) Additionally, Plaintiff's name "was placed on the list to see the [doctor]." (Id.) Plaintiff attended regular appointments with an (unnamed) doctor and Defendant Frick, and Defendant Coats likewise played a role in Plaintiff's care.  (Id.)   In connection with Plaintiff's

_____

    3  By local rule, "[i]f a respondent fails to file a response within the time required . . ., the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice."  M.D.N.C. LR 7.3(k).  In particular, a party's failure "to respond to a summary judgment motion may leave uncontroverted those facts established by the motion."  Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993).  However, the United States Court of Appeals for the Fourth Circuit requires substantive review of even unopposed motions for summary judgment. See id. ("[T]he court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.").

3

treatments, Defendants "perform[ed] basic medical exams to determine [Plaintiff's] vital signs." (Id.)

On October 6, 2015, Plaintiff underwent an examination by a pulmonary specialist "to determine the extent of [Plaintiff's] illness." (Id.) During a medical appointment at Randolph on October 12, 2015, a (non-party) nurse consulted the on-call physician, who "prescribed several medications." (Id. at 6.) That nurse advised Plaintiff that Defendants previously had lied to him about calling the on-call physician about Plaintiff's illness. (Id.) Plaintiff often perceived negativity and hostility during appointments with Defendants. (Id.)

Around November 10, 2015, Plaintiff experienced a decline in his overall health, which "cause[d him] to initiate emergency treatment from the medical department [at Randolph]." (Id. at 5.) During each visit, Plaintiff requested treatment by a "qualified specialist." (Id. at 6.) On one occasion, Defendant Frick assured Plaintiff that she possessed 35 years of experience as a nurse and "[did] everything a doctor would do." (Id.)

On the morning of November 14, 2015,[4] Plaintiff presented for treatment with "critical" vital signs, "including a fever of 102.3

_____

4 According to the Complaint, that visit occurred on October 14, 2018. (Docket Entry 2 at 6.) Given that (i) Plaintiff signed the Complaint on August 31, 2018 and (ii) other allegations evidently relating to that same incident mention November 14, 2015, it appears that Plaintiff intended to reference his condition on November 14, 2015 (rather than two months after he filed the Complaint). (Id. at 15.)

4

[degrees]." (Id.) However, Plaintiff received no referral to or treatment by a specialist, and "[his] symptoms worsened." (Id.) Apparently in connection with that incident, Defendants "lied to [Plaintiff] about calling the on-call physician for instructions on how to treat [him]." (Id. at 6-7.) According to Plaintiff, staff should have transported him to the hospital in accordance with institutional policy. (Id. at 7.)

Later that afternoon, Plaintiff underwent an examination by another nurse at Randolph, and that nurse called 911, resulting in Plaintiff's transport to the emergency room. (Id.) Hospital personnel conducted x-rays and CT scans of Plaintiff's lungs. (Id.) Plaintiff spent seven[5] days in the hospital (during three of which he remained in critical condition) and "was diagnosed with double pneumonia and organ failure." (Id.)

Although the discharge instructions directed Plaintiff to follow up with a pulmonologist within a week, that visit never occurred. (Id. at 7-8.) Morever, three years passed before Plaintiff "receive[d] the required x-rays." (Id. at 8.) Finally, Defendants lied to Plaintiff about his prescription for Oxycodone and denied him multiple medications (despite a prescription from "a qualified specialist" for such medication). (Id.) As a result of

---

5    One part of the Complaint suggests that Plaintiff's hospital stay lasted from November 14, 2015, until November 21, 2015. (Docket Entry 2 at 7.) Elsewhere the Complaint states that Plaintiff spent nine days in the hospital. (Id. at 9.)

the delay in treatment, Plaintiff has developed (potentially pre-cancerous) nodules in his lungs. (Id.) Defendants' conduct caused Plaintiff to "experience undue pain and suffering" and to sustain permanent damage to his health. (Id.) In sum, in response to Plaintiff's "serious medical need . . . [D]efendants' indifference and negligence caused [Plaintiff's] illness to progress to the point of threatening [his] life . . . and almost killed [him.]" (Id. at 9.) Such conduct allegedly violated Plaintiff's eighth-amendment rights, for which violation Plaintiff seeks compensatory and punitive damages. (Id.)

### B. Exhibits to the Complaint

In connection with those allegations, Plaintiff referenced and submitted four documents as exhibits to the Complaint: a single page of a medical record from Randolph Hospital, dated November 16, 2015 (id. at 16); a letter from Tanvir Chodri, M.D., to the North Carolina Industrial Commission, dated November 2, 2017 (id. at 17); an administrative remedy response from Johnston Correctional Institution, dated April 29, 2016 (id. at 18); and an order from the North Carolina Industrial Commission, dated June 12, 2018 (id. at 19).

The Randolph Hospital record notes the presence of pulmonary nodules, which required "outpatient followup." (Id. at 16.) Kendall Garing, M.D., whose electronic signature appears at the bottom of that record, further described Plaintiff as "acutely and

6

critically ill" and indicated the urgent need to treat Plaintiff's "vital organ failure" and "to prevent further life-threatening deterioration of [his] condition." (Id.)

The letter to the North Carolina Industrial Commission describes Plaintiff's condition on November 16, 2015, when Dr. Chodri treated him. (See id. at 17.) The letter reflects Dr. Chodri's observations that Plaintiff improved while hospitalized and notes that Dr. Chodri recommended a follow-up visit within a week. (Id.) The letter further relates Plaintiff's own report that his condition worsened in the week preceding his admission to the hospital and that his health had declined in the six months since his incarceration. (Id.)

According to the administrative remedy response, Plaintiff filed a grievance at Johnston Correctional Institution on February 23, 2016, concerning alleged improper medical treatment at Randolph. (Id. at 18). The response indicates that staff investigated Plaintiff's concern and responded at two earlier steps of the grievance process. (Id.) Concluding that prison staff had neither violated policy nor evinced indifference, the step-three examiner dismissed Plaintiff's grievance. (Id.)

Finally, the order from the North Carolina Industrial Commission reflects that Plaintiff had initiated an action against the North Carolina Department of Public Safety and that a hearing took place on June 6, 2018. (Id. at 19.) At the hearing,

Plaintiff orally moved for voluntary dismissal without prejudice, which the Deputy Commissioner granted. (Id.)

## C. Defendants' Affidavits and Exhibits

In support of the Summary Judgment Motion, Defendants each submitted a personal affidavit (Docket Entry 41-1 (the "Frick Affidavit"); Docket Entry 41-5 (the "Coats Affidavit")) and attached as exhibits to each affidavit certain of Plaintiff's medical records (Docket Entries 41-2, 41-3, 41-4, 41-6, 41-7).

### 1. Defendant Frick

In the Frick Affidavit, Defendant Frick swore that "[she] operated within a well-defined scope of practice," which included "notify[ing] the physician at Randolph or contact[ing] the on-call provider" when she believed a patient's condition "warranted an elevation of care" and executing orders "entered . . . into a patient's charts, regarding medications[] or other medical treatment." (Docket Entry 41-1, ¶¶ 14-16.) According to the Frick Affidavit, Defendant Frick never lied to any patient, including Plaintiff, about her contact with an on-call physician or about medication orders. (Id., ¶¶ 17-18.) Defendant Frick further averred that she recalled Plaintiff's referral to a pulmonologist and numerous encounters with Plaintiff, during which she "interacted with him in a respectful and professional manner." (Id., ¶¶ 20-21.) In particular, Defendant Frick acknowledged that she treated Plaintiff on November 13, 2015. (Id., ¶ 22.) However,

she denied any knowledge of the alleged events on November 14, 2015, and Plaintiff's subsequent diagnoses. (Id., ¶ 21.) Defendant Frick concluded the Frick Affidavit by stating that her decisions with respect to Plaintiff's care "on November 13, 2015, were based upon [her] years of training and experience as a nursing professional, and [her] assessment of [Plaintiff]." (Id., ¶ 28.) She maintained that "[her] examination of [Plaintiff] was thorough, complete, and was based upon his clinical presentation and subjective complaints." (Id., ¶ 29.)

a. Exhibits

In connection with her affidavit, Defendant Frick submitted "a complete and accurate copy of the medical record of [her] clinical encounter with [Plaintiff] on November 13, 2015" (id., ¶ 22). (Docket Entry 41-2.) According to the Frick Affidavit, that medical record demonstrates that "[Plaintiff] arrived at the clinic complaining of respiratory issues at 12:35 pm." (Docket Entry 41-1, ¶ 24 (citing Docket Entry 41-2 at 1).) His vital signs, including his temperature of 98.8 degrees, appeared normal. (Id., ¶¶ 23-24 (citing Docket Entry 41-2 at 1-2).) Additionally, Defendant Frick swore (and the attached medical record indicates) that (i) Plaintiff smelled of cigarette smoke, (ii) Defendant Frick counseled Plaintiff against smoking, and (iii) Plaintiff had used more than the prescribed dose of his inhaler. (Id., ¶¶ 25-26 (citing Docket Entry 41-2 at 3).)

9

According to another medical record attached to the Frick Affidavit, Plaintiff again sought medical attention around 11:00 p.m. on November 13, 2015. (Docket Entry 41-3 at 1.) Neither Defendant participated in his care during that visit. (See id. at 1-6.) The notes from that encounter reflect that Plaintiff continued to complain about respiratory issues and asked to go to the emergency room. (Id. at 1.) The nurses who treated Plaintiff recorded his temperature as 99.7 degrees, noted that Plaintiff had presented with chest congestion and a fever on November 12, 2015,[6] and called a doctor to obtain a different cough medicine. (Id. at 1, 4.)

The final medical record attached to the Frick Affidavit relates to Plaintiff's treatment on November 14, 2015. (See Docket Entry 41-4 at 1.)[7] Plaintiff sought medical attention based on his reported inability to breathe and sharp pain in his chest. (Id.) The record does not show that either Defendant encountered Plaintiff on that day. (See id. at 1-6.) The nurses who treated Plaintiff noted his shortness of breath, crackles, as well as wheezing, and recorded that Plaintiff "[h]ad [a] fever [two] days ago." (Id. at 1-2, 4.) That record contains two different values

---

6 No documentation of an appointment on November 12, 2015 (or confirmation of Plaintiff's fever on that date) appears elsewhere in the record.

7 The only medical record from that date reflects an appointment in the afternoon, not in the morning as Plaintiff alleged in the Complaint (see Docket Entry 2 at 6).

10

for Plaintiff's temperature during the November 14 visit (99.7 degrees and 98.2 degrees)[8] and indicates that Plaintiff's oxygen saturation remained 93 percent after treatment with a nebulizer. (Id. at 2, 4.) One nurse contacted a doctor about Plaintiff's condition, and a team arrived to transport Plaintiff to the emergency room. (Id. at 2.)

### 2. Defendant Coats

In her affidavit, Defendant Coats averred that "[she] operate[s] within a well-defined scope of practice," which included "notify[ing] the physician at Randolph or contact[ing] the on-call provider" when she believed a patient's condition "warranted an elevation of care" and executing orders "entered . . . into a patient's chart, regarding medications[] or other medical treatment." (Docket Entry 41-5, ¶¶ 14-16.) Defendant Coats denied misrepresenting to any patient, including Plaintiff, her contact with an on-call physician or the status of medication orders. (Id., ¶¶ 17-18.) Defendant Coats further stated that she recalled "interact[ing] with [Plaintiff] in a respectful and professional manner" but lacked knowledge about many of the events underlying the Complaint. (Id., ¶ 20.) More specifically, Defendant Coats swore that she provided care to Plaintiff on November 21, 2015,

---

8    In other words, contrary to the Complaint, which alleged a fever of 102.3 (and later, 102.5) degrees on November 14, 2015 (Docket Entry 2 at 6-7), the only evidence in the record pertaining to that date demonstrates no elevated fever.

11

upon his discharge from the hospital, and again on November 24, 2015. (Id., ¶¶ 21, 23.) Defendant Coats maintained that she noticed during his appointments that Plaintiff smelled of cigarette smoke and that attempted counseling on the adverse effects of smoking resulted in Plaintiff "becom[ing] angry, verbally inappropriate and argumentative." (Id., ¶ 24.)

  a. Exhibits

Defendant Coats submitted two documents along with her affidavit: "complete and accurate cop[ies] of the medical record[s] of [her] clinical encounter[s] with [Plaintiff] on November 21, 2015 [and] . . . November 24, 2015" (id., ¶¶ 21, 23). (Docket Entries 41-6, 41-7.)[9] During the visit on November 21, 2015, Plaintiff advised Defendant Coats about pain medications he received while in the hospital. (Docket Entry 41-6 at 3.) Notes from that visit memorialize Defendant Coats's communications with other providers about Plaintiff's need for pain medication. (Id.; see also Docket Entry 41-5, ¶ 22.) When Plaintiff returned for another appointment with Defendant Coats on November 24, 2015, he complained that he still felt unwell and experienced sweating, a fast heartbeat, and an inability to catch his breath. (Docket Entry 41-7 at 1.) The medical record from that visit shows that

---

  9 The Coats Affidavit describes one attachment as an "amended record showing the entry of an order for antibiotics." (Docket Entry 41-5, ¶ 21.) The first two pages of the first medical record bear the words "See Amendment," and the (amended) pages that follow include a prescription for Clindamycin HCL. (Compare Docket Entry 41-6 at 1–2, with id. at 3–4.)

Defendant Coats ordered a chest x-ray and other tests.  (Id. at 1–2; see also Docket Entry 41-5, ¶ 23.)

**DISCUSSION**

**I.  Summary Judgment Standards**

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Additionally, "[a]s to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id.  The movant bears the burden of establishing the absence of such dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In analyzing a summary judgment motion, the Court "tak[es] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).  In other words, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him.'" Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc)

13

(brackets in original) (quoting <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979)).  If, applying this standard, the Court "find[s] that a reasonable jury could return a verdict for [the nonmoving party], then a genuine factual dispute exists and summary judgment is improper."  <u>Evans v. Technologies Applications & Serv. Co.</u>, 80 F.3d 954, 959 (4th Cir. 1996).

"However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment."  <u>Lewis v. Eagleton</u>, No. 4:08-cv-2800, 2010 WL 755636, at *5 (D.S.C. Feb. 26, 2010) (citing <u>Barber v. Hospital Corp. of Am.</u>, 977 F.2d 872, 874-75 (4th Cir. 1992)), <u>aff'd</u>, 404 F. App'x 740 (4th Cir. 2010); <u>see also</u> <u>Pronin v. Johnson</u>, 628 F. App'x 160, 161 (4th Cir. 2015) (per curiam) (explaining that "[m]ere conclusory allegations and bare denials" or the nonmoving party's "self-serving allegations unsupported by any corroborating evidence" cannot defeat summary judgment).  In response to a summary judgment motion, "the nonmoving party [must] go beyond the pleadings and[,] by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  <u>Celotex Corp.</u>, 477 U.S. at 324 (internal quotation marks omitted).  Factual allegations in a complaint or court filing constitute evidence for summary judgment purposes only if sworn or otherwise made under penalty of perjury.  <u>See</u> <u>Reeves v. Hubbard</u>,

14

No. 1:08cv721, 2011 WL 4499099, at *5 n.14 (M.D.N.C. Sept. 27, 2011), <u>recommendation adopted</u>, slip op. (M.D.N.C. Nov. 21, 2011).

## II.  Deliberate Indifference Standard

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." <u>DeShaney v. Winnebago Cty. Dep't of Soc. Servs.</u>, 489 U.S. 189, 199-200 (1989).  In other words, "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his . . . medical care . . .[,] it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." <u>Id.</u> at 200.

To make out a constitutional claim for deprivation of medical care, a plaintiff must show that a defendant "acted with 'deliberate indifference' (subjective) to [the plaintiff's] 'serious medical needs' (objective)." <u>Iko v. Shreve</u>, 535 F.3d 225, 241 (4th Cir. 2008).  A medical need qualifies as serious if it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Id.</u> (internal quotation marks omitted).  A defendant displays deliberate indifference when he possesses knowledge of the risk of harm to an inmate and knows that

15

"his actions were insufficient to mitigate the risk of harm to the inmate arising from his medical needs." Id. (emphasis and internal quotation marks omitted); see also Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) ("To prove deliberate indifference, plaintiffs must show that 'the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" (brackets in original) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994))).

"The subjective component . . . sets a particularly high bar to recovery." Iko, 535 F.3d at 241. In particular, "deliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. "It requires that a [defendant] actually know of and disregard an objectively serious condition, medical need, or risk of harm." De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013) (internal quotation marks omitted). A plaintiff can satisfy this standard by showing "'that a [defendant] knew of a substantial risk from the very fact that the risk was obvious.'" Scinto, 841 F.3d at 226 (quoting Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015)).

A plaintiff can also establish "a prima face case of deliberate indifference" when "'a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances

16

suggest that the defendant-official . . . had been exposed to information concerning the risk and thus must have known about it.'" Id. (brackets and ellipsis in original) (quoting Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004)). In addition, "'[f]ailure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs.'" Id. (brackets in original) (quoting Miltier v. Beorn, 896 F.2d 848, 853 (4th Cir. 1990), overruled in part on other grounds by Farmer, 511 U.S. at 837). However, "[n]egligence or malpractice in the provision of medical services does not constitute a claim under [Section] 1983." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); see also Harris v. Poole, No. 1:18cv378, 2020 WL 531954, at *14 (M.D.N.C. Feb. 3, 2020) ("[D]isagreements between an inmate and medical provider regarding the inmate's medical care, without more, do not create a constitutional claim, and inmates possess no constitutional right to treatment by a particular type of medical provider.").

Finally, "a significant delay in the treatment of a serious medical condition may, in the proper circumstances," constitute deliberate indifference. Webb v. Hamidullah, 281 F. App'x 159, 166 (4th Cir. 2008). "A[ constitutional] violation only occurs, however, if the delay results in some substantial harm to the patient. Thus, in order to defeat summary judgment on the delay issue, [a plaintiff i]s obligated to establish that the delay in

17

his [treatment] caused him substantial harm . . . ." Id. at 166-67
(footnote omitted); see also Wynn v. Mundo, 367 F. Supp. 2d 832,
838 (M.D.N.C. 2004) ("[T]his court is persuaded that delay in the
receipt of medical care only constitutes deliberate indifference
where the plaintiff can show that the delay caused substantial
harm.") (collecting cases), recommendation adopted, (M.D.N.C. Feb.
7, 2005), aff'd, 142 F. App'x 193 (4th Cir. 2005).

**III.  Analysis**

Defendants' summary judgment brief divides Plaintiff's
allegations "into three sets of contentions[:]" Defendants'
hostility, negativity, and dishonesty toward Plaintiff; Defendants'
failure to contact a specialist "despite certain objective
symptoms[;]" and Defendants' refusal to administer tests,
medications, and treatments in accordance with orders from a
physician.  (Docket Entry 41 at 10.)  As concerns those
contentions, Defendants have urged the grant of summary judgment in
their favor on several grounds, including that (i) the Complaint
targets alleged conduct not actionable under Section 1983;
(ii) "Plaintiff [has] not specifically allege[d] the personal
involvement of either Defendant with respect to [the failure to
contact a qualified specialist and refusal to execute certain
physician orders]" (id. at 11); (iii) "Plaintiff [has] fail[ed] to
present sufficient evidence to satisfy the subjective component of
a deliberate indifference claim" (id. at 10); and (iv) qualified

18

immunity protects Defendants from liability because "no reasonable person in [their] position . . . would have appreciated that their conduct violated Plaintiff's constitutional rights" (id. at 14). The Court need address only Defendants' argument concerning the subjective component of the deliberate-indifference claim. No matter how the Court categorizes the allegations in the Complaint, Plaintiff's claim (or claims) sound only in the Eighth Amendment, and his failure to marshal evidence of Defendants' deliberate indifference entitles Defendants to summary judgment on that basis.

Generally speaking, Plaintiff's lack of response to the Summary Judgment Motion need not doom his claim. See Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993) (requiring substantive review of unopposed summary judgment motions). However, upon review of the record, summary judgment for Defendants remains appropriate. The Frick Affidavit, Coats Affidavit, and medical records submitted by Defendants establish that they encountered Plaintiff on numerous occasions when he sought medical treatment. (See, e.g., Docket Entries 41-1, ¶ 20, 41-5, ¶ 20.) Those materials offer no support for the conclusion that Defendants lied to Plaintiff about contacting the on-call physician or that they denied Plaintiff prescribed medications. (See, e.g., Docket Entries 41-1, ¶¶ 16-18, 41-5, ¶¶ 16-18.) Moreover, the medical records reflect that non-party individuals participated in Plaintiff's care. (See, e.g., Docket Entry 41-3.) Finally, the

19

evidence does not show that Plaintiff presented with a high fever during an appointment with Defendants.  (See, e.g., Docket Entry 41-2 at 1.)  Accordingly, Plaintiff's failure to respond to the Summary Judgment Motion left the foregoing facts "uncontroverted," Custer, 12 F.3d at 416.

Because Defendants have lodged no objection to the records Plaintiff attached to the Complaint, the Court may consider those documents at this stage to determine whether a genuine dispute of material fact exists.  See Jones v. Western Tidewater Reg'l Jail, 187 F. Supp. 3d 648, 654 (E.D. Va. 2016) ("Rule 56(c)(2) prescribes a 'multi-step process by which a proponent may submit evidence, subject to objection by the opponent and an opportunity for the proponent to either authenticate the document or propose a method [of] doing so at trial.'" internal quotation omitted)).  Those records indicate that Plaintiff arrived at the hospital in a critically ill state, with conditions that required follow-up treatment.  (See Docket Entry 2 at 16-17.)  Importantly, however, Plaintiff's submissions do not contradict Defendants' sworn statements and records; in particular, they do not show that Defendants treated Plaintiff when he presented with obvious signs of serious illness in or around the time of this hospitalization or that they otherwise exhibited deliberate indifference.

In all, Defendants have offered evidence tending to show that they (i) lacked the requisite culpable mental state for a

deliberate-indifference claim and (ii) responded reasonably to
Plaintiff's symptoms and prescribed treatment plan. Under those
circumstances, Plaintiff, as "the nonmoving party[, must] go beyond
the pleadings and[,] by [his] own affidavits, or by the
depositions, answers to interrogatories, and admissions on file,
designate specific facts showing that there is a genuine issue for
trial." Celotex Corp., 477 U.S. at 324 (internal quotation marks
omitted). Plaintiff has failed to present any such competent
evidence and may not rely on the mere allegations of his unverified
Complaint to defeat summary judgment. See Pronin, 628 F. App'x at
161. Accordingly, the Court should grant summary judgment in favor
of Defendants.

## CONCLUSION

Because the record lacks any evidence to support an essential
element of Plaintiff's eighth-amendment claim, Defendants have
shown entitlement to judgment as a matter of law.

**IT IS THEREFORE RECOMMENDED** that the Summary Judgment Motion
(Docket Entry 40) be granted.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February 5, 2021